### VIRGINIA DEPARTMENT OF STATE POLICE and CONSOLIDATED RISK MANAGMENT SERVICES

v.

### RENITA CLEMMONS DEAN

No. 1139-92-3

Decided April 20, 1993

COUNSEL

James W. Osborne, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellants.

Deborah W. Dobbins (Gilmer, Sadler, Ingram, Sutherland & Hutton, on brief), for appellee.

OPINION

**BENTON, J.**—The Virginia Department of State Police appeals from an award by the Workers' Compensation Commission granting Renita Clemmons Dean benefits for temporary total work incapacity. The Department contends: (1) the commission erred in reversing the deputy commissioner's credibility-based findings of fact; (2) the commission ignored the credible evidence and erroneously found "clear and unequivocal" evidence sufficient to support equitable estoppel; (3) the evidence does not prove equitable estoppel; and (4) the commission erred in applying the doctrine of estoppel to a state agency. For the reasons that follow, we affirm the commission's award.

I.

At the evidentiary hearing before the deputy commissioner, the evidence proved that Dean sustained a work-related back injury on July 5, 1989, while employed as a communications operator for the Department. Dr. C.D. Moore, Jr., diagnosed her injury as a low back strain with lumbar neuropathy. An award was entered granting Dean compensation benefits beginning July 13, 1989, and continuing during her incapacity. Dr. Moore elected to treat Dean's injury conservatively and authorized Dean to return to work on July 17. However, Dean continued to experience chronic low back pain and some leg pain. On June 17, 1991, while at work, Dean experienced an onset of severe back and leg pain. She was seen again by Dr. Moore and by Dr. James M. Vascik, a neurological surgeon, who diagnosed her condition as a herniated disc and scheduled her for surgery on July 15.

Betty Nuckols, the Department's coordinator for leave and workers' compensation claims, testified that Dean's husband had a telephone conversation with her on June 21 concerning Dean's problems and asked, "What do we need to do?" Nuckols informed him that she, Nuckols, would file a First Report of Accident and get all the information from the doctors. Several days later and before her surgery, Dean called Nuckols and asked whether she needed to do anything further. Nuckols said, "no, . . . everything was taken care of, they had filed the reports." In June or early July, Dean also talked with Coleen Vaughan, the claims servicing agency representative. Dean summarized those conversations as follows:

> Well, I talked to her several — on several different occasions, and every time I talked to her she said — I asked if there was anything else that I needed to do, and she said no, you needed to wait until the panel made the decision —just wait until the panel made their decision. And then if they denied my claim, at that time I could file for a hearing before the Industrial Commission.

Following these conversations, the Department filed supplemental reports with the commission on July 15 and July 30 relating Dean's recurring pain to the July 1989 injury. However, on August 1, 1991, the Department refused to pay workers' compensation benefits, contending that any medical treatment Dean received after July 17, 1989, was not related to her July 5, 1989, compensable injury. On August 8, 1991, Dean filed an application for a hearing in which she alleged a change in condition.

## II.

On this evidence, the deputy commissioner held that pursuant to Code § 65.2-603, Dean was entitled to "medical attention . . . as long as necessary after [the initial] accident" because an award had been entered. However, the deputy commissioner denied Dean's claim for compensation for work incapacity, finding that her application for change in condition was not filed within twenty-four months from the last day for which compensation was paid as required by Code § 65.2-708. Finding "no scheming or calculating on the part of the [Department] or [insurance] carrier in which they calculated to induce or did in fact induce [Dean] not to file her claim," the deputy commissioner further held that the Department was not estopped from asserting that Dean's application for a change in condition was time-barred.

On review, the commission held that Dean "carried the burden of proving by clear and unequivocal evidence that the [Department] made representations on which she relied and is estopped from invoking the time limitation of Code § 65.2-708." Thus, the commission reversed the deputy commissioner's denial of an award to Dean for compensation for temporary, total work incapacity.

## III.

"Generally, the full commission remains free to make different findings of fact than those made by the deputy commissioner." *Williams v. Auto Brokers*, 6 Va. App. 570, 573, 370 S.E.2d 321, 323 (1988). "It lies within the commission's authority to determine the facts and the weight of the evidence, and its findings in that regard, when supported by credible evidence, will not be disturbed on appeal." *Rose v. Red's Hitch & Trailer Servs., Inc.*, 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990) (citation omitted). However, in making findings of fact, "the full commission may not arbitrarily disregard the [deputy commissioner's credibility-based] finding unless it is evident from the record that there existed some basis for the full commission's different interpretation of the witness' credibility." *Williams*, 6 Va. App. at 573, 370 S.E.2d at 323. We disagree with the assertion that the commission reversed findings of fact made by the deputy commissioner that were based upon his assessment of the credibility of witnesses.

The only credibility-based finding of fact the deputy commissioner made was that "[a]fter having had an opportunity to observe the demeanor of Betty Nuckols, and upon considering her testimony, [the deputy commissioner] would have serious difficulty with the proposition that Nuckols, either singly, or in concert with representatives of the servicing agency, either schemed or calculated to induce the claimant not to file her claim." The commission, likewise, found that Nuckols did not have "any intent to prevent the claimant from filing a claim." In concluding that Dean established the elements of equitable estoppel, the commission did not dispute any of the deputy commissioner's findings of fact. Instead, the commission concluded that under the test announced in *Stuart Circle Hospital v. Alderson*, 223 Va. 205, 288 S.E.2d 445 (1982) (per curiam), Nuckols' intent was not dispositive of the issue of estoppel.

## IV.

The Department contends that the commission was without sufficient credible evidence to find clear and unequivocal evidence of equitable estoppel and, further, that the evidence did not meet the standards required to prove equitable estoppel. We disagree.

█ The witnesses in this case did not contradict each other's testimony. "When the issue is the sufficiency of the evidence and there is no conflict in the evidence, the issue is purely a question of law." *Cibula v. Allied Fibers & Plastics*, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992), *aff'd*, 245 Va. 337, 428 S.E.2d 905 (1993). In applying the principles announced by the Supreme Court in *Stuart Circle*, this Court observed that "proof of a representation, reliance, change of position, and detriment is sufficient to establish equitable estoppel." *Id.* at 324, 416 S.E.2d at 711. We do not agree with the Department's argument that Dean was required to establish "assurances of payment, . . . past pattern of conduct, [or] . . . false expectation of payment." In cases involving equitable estoppel, "[t]he employee's case is made if the 'representation . . . did in fact induce the [employee] to refrain from filing [a claim].' " *Id.* at 325, 416 S.E.2d at 711.

The testimony of Dean and her husband was consistent with the testimony of Nuckols. Nuckols confirmed that they asked her what needed to be done to perfect Dean's claim and that she advised them. Indeed, Nuckols stated, "I, myself, thought what needed to be done had been done." She also testified that each time she talked to the Deans, they asked, " 'What do we need to do?' "

When Dean was asked why she did not file an application for hearing prior to August 5, 1991, she responded:

> Because I thought everything was taken care of. I was told by my employer and the insurance company that there was nothing else that I needed to do, that everything was taken care of. They assured me that everything had been done to — for the statute of limitations not to run out on me, that everything was done.

The uncontroverted evidence supports Dean's contentions that Nuckols' and Vaughan's affirmative assurances concerning Dean's claim were representations that induced Dean to believe that she was in compliance with all workers' compensation requirements. Dean relied on their assurances and, to her detriment, failed to file a claim. *See Cibula*, 14 Va. App. at 325, 416 S.E.2d at 712. The commission

did not err in finding the evidence of estoppel to be clear, precise, and unequivocal.

## V.

Finally, the Department contends that the commission erred in applying the doctrine of estoppel to it, an agency of the Commonwealth. We will not consider this argument because the Department did not raise this issue before the commission. *See Green v. Warwick Plumbing & Heating Corp.*, 5 Va. App. 409, 413, 364 S.E.2d 4, 6, *appeal dismissed*, 371 S.E.2d 7 (Va. 1988). Accordingly, we affirm the commission's award.

*Affirmed.*

Baker, J., and Coleman, J., concurred.